UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14-cv-00390-JHM

CHASE LAMBERT                                                                                          PLAINTIFF

V.

G.A. BRAUN INTERNATIONAL, LTD.                                                          DEFENDANTS
and G.A. BRAUN, INCORPORATED

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two separate motions by Defendants for Summary Judgment [DN 27, 36] and a Motion for Leave to File a Reply Memorandum in Excess of Fifteen Pages [DN 32]. Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

This action involves an incident on May 29, 2013, in which Plaintiff Chase Lambert was injured at work. Plaintiff was employed by Cintas Corporation in Louisville, Kentucky as a wash alley attendant. (Defs.' Fist Mem. Supp. Mot. Summ. J. [DN 27] at 7; Lambert Dep. [DN 27-10] at 66:1–9.) As a part of its business, Cintas transports soiled products that it picks up from its customers and processes/cleans these products in its facility, where wash alley attendants, like Plaintiff, wash and dry them. (Alsip Dep. [DN 27-1] at 13:17–25; 14:1–12.)

On the day of Plaintiff's injury, Plaintiff was working the second shift in the wash alley. (Defs.' Fist Mem. Supp. Mot. Summ. J. [DN 27] at 7; Lambert Dep. [DN 27-10] at 52:2–21.) Plaintiff was responsible for loading wet mats into the large industrial dryers manufactured by Defendants. (Lambert Dep. [DN 27-10] at 46:11–2.) The wet mats move along an overhead pulley system in bags along an overhead rail. (Id. at 47:9–25, 48:1–17.) As Plaintiff was manually loading the wet mats into the dryer, the dryer was set on automatic mode and the drum

was rotating. (Id. at 46:2.) When one of the dryer fins hit one of the bags containing the wet mats, Plaintiff's hand got tangled in the bag, and, due to the rotation of the drum, Plaintiff was lifted off of the ground several times resulting in a broken arm. (Id. at 48:15–22, 52:2–12, 48:21–22).

Plaintiff brought this suit against Defendants, alleging a manufacturing defect, design defect, failure to warn claim, and breach of implied warranty. (Pl.'s Compl. [DN 1-2] at 3–4.) Defendants now request the Court to grant summary judgment on all claims. (Defs.' First Mot. Summ. J. [DN 27] at 1; Defs.' Second Mot. Summ. J. [DN 36] at 1.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not

establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Plaintiff has alleged a manufacturing defect, a design defect, a failure to warn claim, and a breach of implied warranty. The Court will address them in turn.

### A. Manufacturing Defect

"Under Kentucky law, a manufacturing defect exists in a product when it leaves the hands of the manufacturer in a defective condition because it was not manufactured or assembled in accordance with its specifications." Greene v. B.F. Goodrich Avionics Sys., Inc., 409 F.3d 784, 788 (6th Cir. 2005) (citing Ford Motor Co. v. McCamish, 559 S.W.2d 507, 509–11 (Ky. Ct. App. 1977)). This means that "[a] manufacturing defect claim requires" the determination that "the product failed because of an error in the process of manufacture or assembly." Id. To prevail on this strict liability theory, "a litigant must show that a product 'was not manufactured or assembled in accordance with its specifications' and that the deviation was a 'substantial factor' in his injury. Low v. Lowe's Home Centers, Inc., 771 F. Supp. 2d 739, 743 (E.D. Ky. 2011) (citing Greene, 409 F.3d at 788).

Although Plaintiff pled a manufacturing defect claim, he has failed to provide any evidence of one. Neither Plaintiff nor his expert, Mr. Johnson, offer any evidence that the dryer "was not manufactured or assembled in accordance with its specifications," as is required for a manufacturing defect claim. Low, 771 F. Supp. 2d at 744. The main thrust of Plaintiff's case is

3

his allegation of defective design, which will be addressed in the next section. Therefore, the Court will grant summary judgment on the manufacturing defect claim.

### B. Design Defect

"Whether based on a negligence or strict liability theory, Jones v. Hutchinson Mfg., Inc., 502 S.W.2d 66, 69–70 (Ky. 1973)," in a design defect case, "the plaintiff must show that the 'design itself selected by the manufacturer'—the plan, structure, choice of materials, and specifications, id. at 69—was 'unreasonably dangerous[,]' Nichols v. Union Underwear Co., 602 S.W.2d 429, 433 (Ky. 1980)." Low, 771 F. Supp. 2d at 741. In order to do this and to establish a prima facie case for design defect, a plaintiff must offer proof of: 1) "an alternative safer design, practicable under the circumstances"; 2) "what injuries, if any, would have resulted had the alternative, safer design been used"; and 3) "some method of establishing the extent of enhanced injuries attributable to the defective design." McCoy v. Gen. Motors Corp., 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998), aff'd, 179 F.3d 396 (6th Cir. 1999) (quoting Caiazzo v. Volkswagenwerk A.G., 647 F.2d 241, 250 (2nd Cir. 1981)); see Caudill v. Toyota Motor Corp., No. CIV.A. 04-333-DLB, 2005 WL 3149311, at *3 (E.D. Ky. Nov. 23, 2005). "[T]he onus is on [the] [p]laintiff to provide expert testimony setting forth 'competent evidence of some practicable, feasible, safer, alternative design.'" Franklin v. Enter. Rent-A-Car Co. of Cincinnati & Kentucky, No. 4:10CV-00072-JHM, 2013 WL 820858, at *2 (W.D. Ky. Mar. 5, 2013) (quoting Estate of Bigham v. DaimlerChrysler Corp., 462 F. Supp. 2d 766, 773 (E.D. Ky. 2006)).

First, for an alternative feasible design, "Plaintiffs must show 'something more than that it was 'theoretically probable that a different design would have been feasible.'" Estate of Bigham v. DaimlerChrysler Corp., 462 F. Supp. 2d 766, 776 (E.D. Ky. 2006) (quoting Brock v. Caterpillar, Inc., 94 F.3d 220, 224 (6th Cir. 1996)). Even evidence or "proof that technology

existed, which if implemented would feasibly have avoided a dangerous condition, does not alone establish a defect." Id. (quoting Brock, 94 F.3d at 224). "Under Kentucky law, design defect liability requires such proof" that a feasible, alternative, safer design exists. Caudill, 2005 WL 3149311, at *3 (citing Toyota Motor Corp. v. Gregory, 136 S.W.3d 35, 41–42 (Ky. 2004)). Second, the plaintiff must also produce evidence that the alternative design "would have prevented the injury." Dalton v. Animas Corp., 913 F. Supp. 2d 370, 375 (W.D. Ky. 2012) (citing Cummins v. BIC USA, Inc., 835 F. Supp. 2d 322, 326 (W.D. Ky. 2011)); see Gregory, 136 S.W.3d at 42.

Plaintiff has failed to show that a feasible alternative or safer design existed. Plaintiff's expert, Mr. Johnson, examined the dryer and concluded that the dryer and its protective measures were unsafe and hazardous. (Johnson Report [DN 19-1] at 8–11.) However, Johnson proffers no alternative design, no proof that the design would be feasible and no argument or evidence that the alternative design would have prevented the injury. He merely concludes that "there were no protective measures implemented to eliminate the hazard of operator exposure to moving parts with the dryer set in automatic mode," "[d]ryer safeguards were not effective in all operating modes," and generally "Dryer No. 2 was not equipped with an appropriate means of machine control logic and safeguarding to comply with applicable international and national safety standards." (Id. at 6.) Simply restating that the dryer was unsafe does not provide the requisite alternative design, feasibility, or potential prevention of injury components necessary for design defect claims. The only potential proposal of an alternative design, reading the record generously in Plaintiff's favor, is as follows: "At the front of the dryer where loading occurs, there was no sensitive protective equipment, such as pressure sensitive protective devices or mats, which would stop the dryer from spinning if a person was in the loading area where

5

exposure to rotating parts could occur." (Id.) However, Johnson does not truly propose an alternative design; rather, he simply states that the dryer itself lacked certain safety features and gives examples of those features. Even if construed as an alternative design proposal, neither Plaintiff nor Johnson points to evidence in the record that proves that it is feasible or that it would have mitigated or prevented Plaintiff's injury. See Estate of Bigham, 462 F. Supp. 2d at 776 (granting summary judgment for defendant because the plaintiffs failed to offer competent expert testimony and to identify at least one design alternative).

Furthermore, Plaintiff ignores the fact that the dryer system was designed with sufficient safeguards when used in automatic mode in the manner intended. Defendants designed a key switch on the front of the dryer to switch the dryer from automatic to manual. When switched to manual the dryer drum cannot automatically spin. A laborer who is manually loading a dryer, switch to the manual setting, in order to make the dryer drum rotate, must remove his hands from the dryer to operate controls on the outside of the dryer. Thus, the evidence is clear that the Defendants designed sufficient safeguards to protect against what occurred in this case.

Therefore, Plaintiff has failed to establish by competent evidence that a feasible alternative or safer design existed. Because Kentucky law requires such proof for design defect liability, see Gregory, 136 S.W.3d at 41–42, and because Defendants have shown that it designed the dryer in a safe manner, free from design defects, Plaintiff's claim fails as a matter of law.[1]

---

[1] "A plaintiff in Kentucky can bring a defective design claim under either a theory of negligence or strict liability." Dalton, 913 F. Supp. 2d at 377 (quoting Ostendorf v. Clark Equip. Co., 122 S.W.3d 530, 535 (Ky. 2003)). "We think it apparent that when the claim asserted is against a manufacturer for deficient design of its product the distinction between the so-called strict liability principle and negligence is of no practical significance so far as the standard of conduct required of the defendant is concerned." Nichols, 602 S.W.2d at 433. Under either theory, "the standard required is reasonable care." Id. Therefore, because Plaintiff cannot succeed on a strict liability theory, assuming Plaintiff has asserted a negligent design claim, it must fail for the reasons set forth above in the strict liability analysis.

### C. Failure to Warn

Plaintiff additionally claims that Defendants failed to exercise reasonable care "to warn Plaintiff of dangers that were latent, unknown, or not obvious" and "to discover the existence of dangerous conditions and either correct or warn of them." (Compl. [DN 1-2] ¶ 17.) Under Kentucky law and the Restatement (Second) Torts § 388, a defendant is liable under a negligent failure to warn claim if he "(a) knows or has reason to know that the chattel is likely to be dangerous for the use for which it is supplied, (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Tipton, 101 F.3d at 1149–50 (citing Restatement (Second) of Torts § 388 (1965)). "Under the negligence theory of recovery, a manufacturer must 'warn the consumer of non-obvious dangers inherent in the probable use of the product,' even dangers from foreseeable misuse." Id. at 1150 (quoting Byrd, 629 F.Supp. at 605). In the case of negligent failure to warn, "the manufacturer is not charged with hindsight, as with strict liability." Id. (citing Byrd, 629 F. Supp. at 605 n. 5).

Plaintiff's evidence on this claim consists of his expert's opinion that Defendants failed to provide "information" about how users are supposed to program the dryer and "what safeguards are necessary to prevent the operator from being exposed to rotating parts during loading." (Pl.'s Resp. [DN 30] at 6; Johnson Report [DN 19-1] at 11.) As discussed, the dryer system was designed in a way to prevent the drum from spinning in automatic mode while being loaded manually. Aside from that, it is clear that the Defendants knew of the dangers involved and that they warned of that danger by placing the following amputation hazard warning in the Operations Manual and on the front of the dryer itself:

7



[Wilbur Aff. 9, Ex. E].

It is hard to imagine what additional information the Defendant could have provided to safeguard an operator from being exposed to rotating parts during loading. The Court finds that no reasonable jury could find in favor of the Plaintiff on his failure to warn claim.

Besides, "[t]he Kentucky Court of Appeals specifically stated that all product liability actions, 'regardless of whether the case involves failure to adequately warn, defective design or other products liability theories, [require proof that] the product is defective.'" Shetler v. ALDI, Inc., No. 3:10-CV-00778-JHM, 2012 WL 3264937, at *7 (W.D. Ky. Aug. 9, 2012) (quoting Leslie v. Cincinnati Sub-Zero Products, Inc., 961 S.W.2d 799, 803–04 (Ky. Ct. App. 1998); see Shea v. Bombardier Recreational Products, Inc., No. 2011-CA-000999-MR, 2012 WL 4839527, at *4 (Ky. Ct. App. Oct. 12, 2012) ("Negligence and strict liability theories of recovery overlap to the degree that, in either instance, the plaintiff must prove the product was defective and the legal cause of the injury."); see also Tipton, 101 F.3d at 1150 (holding that under Kentucky law, theories of negligence or strict liability both require that a jury first find the product was defective); Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776, 782 (Ky. 1984) ("The sole question in a products liability case is whether the product is defective as defined in [Nichols, 602 S.W.2d at 433]. Adequate warnings and descriptive literature are evidentiary

considerations."); Holbrook v. Rose, 458 S.W.2d 155, 157 (Ky. Ct. App. 1970) (whether the action involves negligent design, negligent failure to adequately warn, or the sale of a defective product that is unreasonably dangerous because of an inherent defect or inadequate warning, in every instance, the product must be a legal cause of the harm"). So, when "[t]he failure to warn claim is based on the assertion that the product is defective," and there is "no proof of a probable defect," causing "the negligent design or manufacture claim [to fail]," the negligent failure to warn claim must similarly fail. Shetler, 2012 WL 3264937, at *7 (W.D. Ky. Aug. 9, 2012). Here, Plaintiff's negligent failure to warn claim is based on the same assertion that the Braun dryer was defective in manufacture and/or design, and both of those claims failed. Thus, Plaintiff's negligent failure to warn claim cannot succeed either as there is no proof that the product is defective.

### D. Breach of Implied Warranty

Defendants' Second Motion for Summary Judgment fully addresses the breach of implied warranty claim. In support, Defendants argue that Plaintiff's breach of implied warranty claim fails as a matter of law because Plaintiff was not in privity of contract with Defendants and Defendants successfully disclaimed any implied warranties. Plaintiff does not respond to the privity argument. "Federal Rule of Civil Procedure 56(e) requires that the nonmoving party's response designate specific facts demonstrating the existence of genuine issues of material fact." Spurlock v. Whitley, 79 F. App'x 837, 839 (6th Cir. 2003). Therefore, "[t]he nonmoving party is deemed to have waived its opportunity to designate facts in accordance with Rule 56(e) when it fails to properly file a response. Id. (citing Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 405 (6th Cir. 1992)). It is not the role of the district court to develop facts for the nonmoving party; therefore, Plaintiff has effectively waived its opposition to this argument. Id.; Caterpillar

9

Fin. Servs. Corp. v. Sunnytime Seeding & Landscaping, LLC, No. CIV. 10-316-GFVT, 2011 WL 4834242, at *2 (E.D. Ky. Oct. 12, 2011). Regardless, the Court finds the privity argument persuasive on the merits and enough to grant summary judgment in favor of Defendants.

In Kentucky, "privity of contract is an essential element of a claim for breach of warranty." Pruitt v. Genie Indus., Inc., No. CIV.A. 3: 10-81-DCR, 2013 WL 139701, at *3 (E.D. Ky. Jan. 10, 2013); (quoting Allen v. Abbott Labs., No. 11-146-DLB, 2012 WL 10508, at *5 (E.D. Ky. Jan. 3, 2012)); see KRS § 355.2-318; Compex Int'l Co. v. Taylor, 209 S.W.3d 462 (Ky. 2006) (dismissing an implied warranty claim was against the manufacturer of a product for lack of contractual privity where the buyer purchased the product from a third party distributor); Brown Sprinkler Corp. v. Plumbers Supply Co., 265 S.W.3d 237, 240 (Ky. Ct. App. 2007) (stating that an implied warranty claim must establish that the plaintiff enjoyed privity of contract with the defendant against whom the implied warranty claim is asserted).

Privity of contract requires "an underlying contractual relationship," one existing in a "buyer-seller relationship." Compex, 209 S.W.3d at 465. However, "Kentucky law provides that the warranty of a seller 'extends to any natural person who is in the family or household of [the seller's] buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.'" Allen, 2012 WL 10508, at *5 (quoting KRS § 355.2-318); see Williams v. Fulmer, 695 S.W.2d 411, 413 (Ky. 1985) (holding that "[i]f liability is based on the sale of a product, it can be extended beyond those persons in privity of contract only by some provision of the U.C.C. as adopted by Kentucky," the only such provision being KRS § 355.2-318). Therefore, "privity of contract for purposes of a breach of warranty claim requires a buyer-seller

10

relationship, with narrow statutory exceptions provided for the family members and household guests of that buyer." Id.

This narrow extension to household members does not extend to employees. The Kentucky Court of Appeals has found that it is "obvious" that "the Legislature did not intend to include employees of the buyer within the parameters of the statute." McLain v. Dana Corp., 16 S.W.3d 320, 326–27 (Ky. Ct. App. 1999). As the Kentucky Supreme Court noted in Williams, "the Legislature was aware, when enacting our version of the Uniform Commercial Code, that other alternatives to the statute existed which extended the concept of privity to allow a broader range of injured persons to assert warranty theories of recovery." Id. (citing Williams, 695 S.W.2d at 414). However, Williams makes clear that "commercial sales law is statutory," and the Kentucky "Legislature chose to limit actions for breach of warranty as provided in KRS § 355.2-318. It is not the function of the courts to extend the concept of privity to include those whom the Legislature has not seen fit to protect." Id.; see Taylor v. Southwire Tools & Equip., 130 F. Supp. 3d 1017, 1021 (E.D. Ky. 2015) ("Warranties do not extend to employees of a commercial purchaser.").

Here, the facts as set forth in Defendant's Second Motion for Summary Judgment are sufficient to demonstrate that Defendants are entitled to judgment on this claim as a matter of law. Plaintiff was simply an employee of Cintas'; he was neither the commercial purchaser himself nor a member of the same family or household as Cintas. Plaintiff, as the non-moving party, has both failed to address this argument and to direct the Court's attention to any specific evidence that supports a finding of privity of contract. The record, therefore, does not establish the requisite privity of contract between Plaintiffs and Defendant to support a claim for breach of

implied warranty under Kentucky law. Accordingly, Defendant's Second Motion for Summary Judgment regarding Plaintiffs' breach of implied warranty claim is granted.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that both of Defendant's Motions for Summary Judgment [DNs 27, 36] are **GRANTED**, and Defendant's Motion for Leave to File a Reply Memorandum in Excess of Fifteen Pages [DN 32] is **GRANTED**.

          **Joseph H. McKinley, Jr., Chief Judge**
          **United States District Court**

June 17, 2016

cc: counsel of record